THE CITY OF PEORIA, Appellant, *v.* ALVAN KIDDER, Appellee.

APPEAL FROM PEORIA.

An assessment for opening a street in the city of Peoria is not a tax, nor is such an assessment repugnant to the provisions of the constitution relative to taxation.

The mode pointed out for raising assessments by the act incorporating the city, to compensate for opening streets, is proper and equitable.

A party who has redress at law, and neglects his remedy, cannot resort to chancery.

The city of Peoria has the right, under its charter, to extend streets, and make assessments, and a court of equity will not interfere with its authority.

KIDDER filed his bill in the Peoria Circuit Court for an injunction to restrain the city from collecting an assessment made upon a certain lot in Peoria, to pay damages occasioned by opening a street.

The bill states that the city was incorporated on the 2nd December, 1844, by a special act. That on the 12th February, 1855, the charter was amended, and a law passed providing for the opening streets, etc., in the city ; which act is substantially set out in the bill.

SECTION 1. That the city council of the city of Peoria shall have power to open, lay out, alter, abolish, widen, extend, straighten, establish, grade, pave and name, or otherwise improve or keep in repair public squares or grounds, streets, avenues, lanes, alleys, or highways, within the corporate limits of the city of Peoria.

SEC. 3. Whenever, in the opinion of the city council of the city of Peoria, it shall be necessary to take private property for opening, laying out, altering, widening, extending, straightening, or establishing, any public square or grounds, streets, avenues, lanes, alleys, highways, public wharves, docks, slips, or landing places, within the limits of said city, the corporation shall make a just compensation therefor to the person or persons whose property is proposed to be taken ; and if the amount of such compensation cannot be agreed upon, the mayor of said city shall file with the judge of the County Court of Peoria county a petition praying for the appointment of three disinterested freeholders of said city, as commissioners to estimate and assess the amount of such compensation.

SEC. 4. On the filing of said petition with the county judge of said county, it shall be his duty to appoint three commissioners, as aforesaid, to ascertain and assess the damages and recompense due the owners of such land, respectively, and at the same time to determine what persons will be benefited, in proportion, as nearly as may be, to the benefits resulting to each.

SEC. 5. The commissioners shall be sworn faithfully to execute their duty, according to the best of their ability, before entering on their duties. They shall give notice to the persons interested, of the time and place of their meeting, for the purpose of viewing the premises and making their assessment, at least five days before the time of such meeting, by publishing

the same in the newspaper selected by the city council for publishing their ordinances and proceedings for the time being. Said commissioners shall view the premises, and, in their discretion, receive any legal evidence, and may, if necessary, adjourn from day to day.

SEC. 6. The commissioners shall thereupon proceed to make their assessment, and determine and appraise to the owner or owners the value of the real estate appropriated for the improvement and the injury arising to them, respectively, from the condemnation thereof, which shall be awarded to such owners, respectively, as damages, after making due allowance therefrom for any benefit which such owners may respectively derive from such improvement.

SEC. 7. If the damage to any person be greater than the benefits received, or if the benefit be greater than the damage, in either case the commissioners shall strike a balance, and carry the difference forward to another column, so that the assessment may show what amount is to be received or paid by such owners, respectively; and the difference only shall, in any case, be collected of them or paid to them.

SEC. 8. If the land and buildings belong to different persons, or if the land be subject to lease or mortgage, the injury done such persons, respectively, may be awarded to them by the commissioners, less the benefits resulting to them, respectively, from the improvement.

SEC. 9. Having ascertained the damages and expenses of such improvement, as aforesaid, the commissioners shall, thereupon, apportion and assess the same, together with the costs of proceedings, upon the real estate by them deemed benefited, in proportion to the benefits resulting thereto from the improvements, as nearly as may be, and shall describe the real estate upon which their assessments may be made. When completed, the commissioners shall sign and return the same to the said county judge within thirty days of their appointment.

SEC. 10. The clerk of said County Court shall give ten days' notice, in the newspaper as aforesaid, that such assessments have been returned, and, on a day to be specified therein, will be confirmed by the said County Court, unless objections to the same are made by some person interested. Objections may be heard before the County Court, and the hearing may be adjourned from day to day. The court shall have power, in its discretion, to confirm or annul the assessment, or refer the same back to commissioners. If annulled, all the proceedings shall be void; if confirmed, a judgment shall be rendered against the property or lands benefited in favor of the city of Peoria, and an order of confirmation shall be entered on the records of said

court, directing an execution to issue to the sheriff of said court, commanding him to levy upon and sell the said property so benefited, and against which said judgment may be rendered; and said sheriff shall proceed to advertise and sell the same, as upon executions at law.

SEC. 11. If said report or assessment be referred back to the same or other commissioners, they shall proceed to make their assessments, and return the same, in like manner, and give like notices, as herein required in relation to the first; and all parties in interest shall have the like notices and rights, and the said court shall perform like duties, and have like powers, in relation to any subsequent determination as are herein given in relation to the first.

SEC. 12. The said County Court shall have power to remove commissioners, and from time to time appoint others in the place of such as may be removed, refuse, neglect or be unable, from any cause, to serve.

SEC. 17. The said city council shall have power to provide, by ordinance or resolution, for the compensation or fees of said judge, clerk and commissioners, and for the survey and plat of such improvement, and to prescribe the form of any notice, petition, judgment, execution or other proceeding in their judgment necessary and proper to perfect the making of any such improvement.

The bill further states, that on the 30th day of October, A. D. 1855, the city council passed an ordinance providing for the appropriation of private property for public use. This ordinance is also set out in the bill, as also the form of petition, the form of appointment of commissioners who are to make the assessments, the form of oath to be administered to them, the forms of the notices to be given, their report, etc.

The bill alleges that the 9th section of the amendatory act is repugnant to the constitution of the State of Illinois, in providing a way of levying and assessing taxes in conflict therewith.

That complainant was, on the 1st day of August, 1859, and still is, owner of seventy-two feet front on Washington street by eighty-five and a half feet deep, part of lot 4, in block 2, in Peoria. That on the 8th of August, 1859, the mayor filed his petition with the judge of the County Court of Peoria county, praying for the appointment of commissioners to assess compensation, etc., to owners of real estate, for opening Washington street from North Fayette street, through Mills Addition to Washington street in Morton, Voris and Laville's Addition to Peoria, etc.

That on the 15th of August, 1859, Sidney Pulsifer, Lewis Keyon and G. L. Ryors were appointed commissioners, and duly

notified of their appointment. The commissioners reported on the 3rd of October, 1859, which report was rejected by the court, and the matter was referred back to the same commissioners.

That on the 12th of October, 1859, the commissioners published a notice that they would meet on the 19th of October, 1859, to make the assessments, etc.

That complainant's lot does not lie within a quarter of a mile of the portion of the street proposed to be opened.

That complainant had no notice other than the published notice aforesaid, that he or his lot assessed is included within the terms of the notice.

The commissioners filed their report on the 11th of November, 1859.

That on the 12th of November, 1859, the clerk of the court published a notice, that said report was filed, and that the same would be confirmed on the 28th of November, 1859, unless objections were made. Copy filed.

That on the 30th of November, 1859, the commissioners' report was approved, and judgment entered against complainant's lot, he being the owner of one-half only, for $225 and costs.

That not having any notice he did not appear, or defend against said judgment, that all the proceedings were had, and judgment rendered in said court without his knowledge, and that said judgment was rendered without authority.

That the assessment and judgment against said lot is unjust and oppressive, and the benefits are not assessed in a uniform manner.

That the commissioners assessed his damages $100, and benefits $325. That other lots are benefited as much as his which are not assessed at all, and that the assessments are not uniform, and that his lot is not benefited to the amount of the judgment. That the costs are also excessive and illegally charged.

That execution has been issued to collect said judgment, which had been delivered to John Bryner, sheriff, who has levied the same upon said lot, and threatens to sell the same; that a sale would cloud complainant's title. That the judgment is void or voidable, etc.

Prayer, that the judgment and proceedings may be set aside, and for a perpetual injunction, etc.

The defendant, by his answer, admits the passage of the acts of February 12th, 1855, and December 2nd, 1844, and the passage of the ordinance, before set out, of the 30th of October, 1855.

Denies that any portion of the law is repugnant to the con-

stitution of the State. Admits that complainant is owner of the lots, that the commissioners were appointed and made their report as stated in the bill. Defendant also admits that the notices were given as stated in complainant's bill. It can neither admit or deny the statement that the complainant had no other notice than as charged in the bill of the proceedings, and insists that the notices set forth as exhibits are sufficient and legal notices.

It admits the rendition of the judgment, the issuing of execution as charged, but denies that any illegal costs are charged. It also states that the assessments were as uniform and equitable as the nature of the case and the circumstances of the parties would permit, and that complainant's lot is benefited to the full amount and value of the judgment rendered against his said lot.

Defendant further states, that the records and exhibits of the County Court, filed September 4th, 1850, are a complete and perfect record and history of the proceedings of the city in opening said street, in complainant's bill mentioned, and they refer to said records, and make the whole a part of their answer in the cause, submitting and insisting that all the proceedings are had and done pursuant to law and the ordinances of the city. They admit that complainant's lot is some distance from that portion of Washington street sought to be opened, but insist that the same is on Washington street, of which the part sought to be opened forms a continuous portion, and that complainant's lot will be greatly benefited by opening said street, and that all the lots along said Washington street, between complainant's lot and the street sought to be opened, are also assessed in proportion to the benefits accruing to each; as will appear by the commissioners' report.

Complainant filed a replication.

The only evidence, other than the exhibits aforesaid, taken in the case, consists of the testimony of *Jacob Darst* and *Wm. M. Dodge*, who state that they are familiar with the complainant's lot, and that the lots on the opposite side of Main street, being also on Washington street, and which are not assessed for opening the street in question, would be equally benefited with complainant's lot in the opening of said street.

The court made the injunction perpetual.

The errors assigned are, the rendering a decree for a perpetual injunction, and not dismissing complainant's bill.

N. H. Purple, for Appellant.

Manning & Merriman, for Appellee.

WALKER, J.  The first objection urged is, that the law authoriz-
ing the city to levy an assessment, to make compensation for injury
sustained by opening a street, is repugnant to our constitution.
The provisions of that instrument, which declare and regulate
the taxing power, are referred to as sustaining this position.
In answer to the objection it is enough to say, that it is the
established doctrine of this court, that assessments of this char-
acter are not taxes.  It is not, therefore, embraced in or regu-
lated by the provisions of the constitution, to which reference
has been made.  The constitution has provided that private
property shall not be appropriated to public use, without just
compensation being made to the owner.  Under this provision,
when it becomes necessary to appropriate private property to
public use, by the opening, widening, or extension of a street in
a town or city, the owner whose property is thus appropriated
must have just compensation made to him, by the public at large,
by the city, or by the persons deriving a pecuniary benefit from
the improvement.  That the legislature may require compensa-
tion to be made in either of these modes, we conceive there can
be no question.

Where an improvement of this character is made, the adjacent
real estate is thereby enhanced in value, unless it be the portions
through or over which the street passes, which may sustain in-
jury, for which the owners must be compensated.  There can, it
seems to us, be no more just and reasonable mode of making
this compensation than that which the legislature has adopted,
by assessing it upon those who receive a direct benefit from the
improvement, in the enhanced value of their real estate, over
and above any injury they may thereby sustain.  And to ascer-
tain and fix the amount that each person deriving benefit by
the improvement shall contribute, to compensate for the loss sus-
tained by those who are injured, a disinterested tribunal is re-
quired to appoint competent and disinterested persons, who,
under oath, ascertain and report, both the amount of the injury
sustained and the benefit derived by each person.  This is fair,
just, and in all respects reasonable.

The right of all parties not to be burthened with an undue
proportion of the expenses is secured by the act.  If dissatisfied
with the assessment, any person feeling himself injured, may
attend and show the fact, and prevent a confirmation of the
commissioners' report, and if dissatisfied with the action of the
court, he may appeal or prosecute error to this court, to reverse
the order of confirmation, and judgment on the assessment.
(Scates' Comp. 1226, sec. 3.)  This affords all parties ample
means of being fully heard, and of having any error corrected.
The law also requires a notice to be given of the time and

place of the assessment, when and where all parties in interest may appear and be heard before the commissioners. Again, a further notice is required of the time and court at which application will be made for a confirmation, and judgment on the assessment. If the latter of these notices is not given, the judgment will be void for want of jurisdiction in the court to act, and a sale under such a judgment will confer no title to real estate.

It is a rule of uniform application, that where a party has a complete remedy at law, and, having the opportunity, slumbers upon his right, and fails to insist upon it, a court of equity will not afford relief. In this case, defendant in error, on the application for judgment of confirmation, and for a sale of his property, in the court below, interposed no defense, but permitted judgment to be rendered against him by default. He having had the notice required by the statute, and failing to appear and interpose his defense, which could have been made on that trial, cannot be heard to insist upon it in a court of equity. His defense, if he had any, was cognizable in a court of law, and having had an opportunity to interpose it in that forum, equity has no power to afford relief.

The city had the right under their charter to extend the street, to have the benefits and damages assessed, and this property was liable to the burthen. And this proceeding is so far in the nature of a tax, that when those facts exist, a court of equity will not interpose to restrain the collection of such an assessment. *McBride* v. *The City of Chicago*, 22 Ill. 574. The decree of the court below must, therefore, be reversed, and the bill dismissed.

*Decree reversed.*